```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND

                                  :
KATHERINE GAYLORD-WALLISCH,
et al.                            :

    v.                            :   Civil Action No. DKC 18-3869

                                  :
BRANDYWINE ONSTRUCTION &
MANAGEMENT, INC., et al.          :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this diversity personal injury case is Plaintiffs' motion for partial summary judgment and to exclude Defendants' engineering expert. (ECF No. 31). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied.

**I.   Background**

In the summer of 2017, Plaintiffs Katherine Gaylord-Wallisch and Aaron Wallisch lived with their minor son ("K.W.") who was around a year and half old at 2809 Boston Street, Baltimore, Maryland 21224 ("Tindeco Wharf"). Tindeco Wharf was owned and managed by Defendant Tindeco Wharf, LLC ("Tindeco") and managed and maintained by Defendant Brandwine Construction & Mgmt, Inc. ("BCMI"). On August 25, 2017, around 9:30 a.m., Ms. Gaylord-Wallisch and her son were in the common area of Tindeco Wharf. The child passed through a nine-inch gap in the railing at the top

of the stairs and, despite attempts from his mother to coax him back to the other side of the railing, lost balance and fell at least twelve feet to the marble floor of the lobby below and suffered a fractured skull and brain injury.  K.W.'s parents subsequently brought suit against Defendants in the Circuit Court for Baltimore City both on behalf of K.W., and personally as his parents, for negligence.  (ECF No. 8-1).

In particular, the complaint alleges that "BCMI and Tindeco . . . owed Plaintiffs a non-delegable duty of care to construct and/or maintain the premises . . . in a reasonably safe condition and/or warn Plaintiff of dangerous conditions" which they breached in "designing, constructing and/or maintaining an unreasonably dangerous gap next to the railing at the top of the stairs leading up from the lobby."  "As a direct and proximate result of the negligence of BCMI and Tindeco and the resulting damages, without any negligence by Plaintiffs, [K.W.] sustained serious, painful, and/or permanent injuries, including, but not limited to, (a) skull fracture, (b) subdural hematoma, (c) subarachnoid hemorrhage, (d) right parietal contusion, (e) diffuse axonal injury, (f) receptive language delays, (g) expressive language delays, (h) speech delays, (i) cognitive communication impairments, and (j) other sequellae [consequences]."  (*Id.*, ¶ 18).  As a result of these injuries, Plaintiffs allege that K.W. "will have an increased risk of developing (a) learning disabilities, (b) behavioral

difficulties, (c) psychiatric issues, (d) further developmental delays, (e) further cognitive issues, (f) seizures, and (g) other sequellae." (*Id.*, ¶ 19).

Defendants subsequently removed the action to federal court. (ECF No. 1). After an initial discovery schedule was entered, (ECF No. 20), the parties jointly moved to extend the relevant deadlines four times. (ECF Nos. 21, 25, 27, 29). Ultimately, an amended scheduling order was issued on January 16, 2020, setting the deadline for Defendants' Fed.R.Civ.P. 26(a)(2) disclosures as February 13, 2020, the deadline for discovery as April 30, 2020, and the deadline for dispositive pretrial motions as June 30, 2020. (ECF No. 30). Toward the close of the discovery period but well after the Defendants' disclosures were due, Plaintiffs filed the currently pending motion for partial summary judgment and to exclude Defendants' engineering expert. (ECF No. 31, at 1). The motion, despite its labeling, asks the court not only to exclude the Defendants' proposed engineering expert from testifying but to ignore *all* expert reports that Defendants may subsequently produce. They argue this exclusion is justified because the Defendants' disclosures deadline passed in February and because of their subsequent inaction. Plaintiffs argue that, unless Defendants produce admissible expert testimony on premises liability and causation, Plaintiffs are entitled to summary judgment on both issues. (ECF No. 31-1, at 7).

## II.    Expert Disclosures

Plaintiffs argue that Defendants have failed to provide expert reports that are compliant with Fed.R.Civ.P. 26. (ECF No. 31-1, at 7). They assert two things should result from that failure: (1) that the court should exclude Brian Mills, P.E., Defendants' proposed engineering expert on premises liability, from testifying at trial, (ECF No. 31, at 4), and (2) that "[Defendants' experts'] opinions should be ignored for the purposes of this Court's summary judgment analysis." (ECF No. 31-1, at 7).

### A.    Standard of Review

> In the absence of a stipulation or court order stating otherwise, Rule 26 requires litigants to provide opposing counsel with a written report prepared and signed by an expert witness who may testify at trial. Fed. R. Civ. P. 26(a)(2)(A)-(B). The expert witness' report must contain, among other things, "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and "any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). A party must make required expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

*Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 189 (4th Cir. 2017). "The purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Id.*

at 190 (quoting *Russell v. Absolute Collection Servs.*, Inc., 763 F.3d 385, 396 (4th Cir. 2014)).

Not all non-disclosures result in exclusion:

> Rule 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." Fed.R.Civ.P. 37(c)(1) (emphasis added). It is the burden of the party facing sanctions to show that the failure to comply was either substantially justified or harmless. See *S[.] States* [*Rack & Fixture, Inc. v. Sherwin-Williams Co.*], 318 F.3d [591,] 596 [(4th Cir. 2003)]. The district court has "broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless." *Id.* at 597.

*Carr v. Deeds*, 453 F.3d 593 (4th Cir. 2006), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *see also* Fed.R.Civ.P. 37 advisory committee's note to 1993 amendment ("Limiting the automatic sanction to violations 'without substantial justification' coupled with the exception for violations that are 'harmless,' is needed to avoid unduly harsh penalties in a variety of situations.").

> In making this determination, district courts are guided by the following factors:
>
>> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial;

5

>           (4) the importance of the evidence;
>           and (5) the nondisclosing party's
>           explanation for its failure to
>           disclose the evidence.

*Bresler*, 855 F.3d 178 at 190 (quoting *S. States*, 318 F.3d at 597).

### B. Analysis

Plaintiffs object to Defendants' expert disclosures because "Defendants did not include complete statements of their expert witness opinions or any facts or exhibits supporting them. Defendants also did not serve a single report for any of their experts" as required by the February deadline or at any time thereafter. (ECF No. 31-1, at 5) (citing Fed.R.Civ.P. 26(a)(2)(B)); (*see also* ECF No. 30, the amended scheduling order).

Plaintiffs are correct that Defendants' expert witness disclosures, which consist of single paragraph summaries attached to the name and address of each of Defendants' proposed experts, fall well short of the full statement of opinion and its basis and full expert report required by Fed.R.Civ.P. 26(a)(2). (*See* ECF No. 31-2, at 85-88). These paragraphs provide only who the experts are and a very brief statement of what evidence they will be able to offer based on their own "evaluation and testing of K.W. and interview with adult Plaintiffs," and such evaluation has yet to occur.

Plaintiffs attach email correspondence to show that they made a "good faith effort" to flag the deficiencies in the expert

6

disclosures to the Defendants on multiple occasions: February 18, February 19, and March 24, 2020. (ECF No. 31-2, at 90-96). Defendants argue that they were making arrangements to have their experts, most of whom are "relatively local," examine Plaintiffs,[1] when "Plaintiffs' counsel announced that he would not require the Plaintiffs to travel either to New Orleans [where the only non-local expert was located] or here in Baltimore" but instead would require all the experts to travel to Las Vegas, Nevada, where Plaintiffs reside. (ECF No. 34). Instead of "arguing unnecessarily" with counsel, Defendants said that they sought to make alternate arrangements and include a February 19, 2020, response to Plaintiffs' counsel that they would work with their experts to arrange evaluations in Baltimore upon Plaintiffs' next visit. (ECF No. 34-1, at 2-3).

These attempts, Defendants explain, were wholly abandoned as COVID hit because "planning travel was futile"; cross-country trips by plane "cannot happen now or anytime soon." Because of this reality, Defendants felt "the situation to be self-evident" and that "answering Plaintiffs' counsel's questions about when the

---

[1] This initial correspondence flagging the deficient disclosures came in response to an email from Defendants' counsel on February 13, 2020, that says, "We should talk about making arrangements for K.W. to be tested by Dr. Nelson, Dr. Barron, and Ms. Koslow, due to the travel logistics." (ECF No. 31-2, at 91).

damages expert reports would be produced would be unnecessary." (ECF No. 34, at 3).

Defendants' counsel surely should have done more, either seeking a joint stipulation or filing a motion to extend the deadline. Counsel's error, however, does not warrant exclusion.

All five *Southern States* factors cut in favor of granting an extension. First, there would be little to no surprise to Plaintiffs in allowing this testimony. This case is well before trial at this stage. Secondly, as to their ability to cure the situation, Plaintiffs have at least partial control over when these expert reports are produced as their presence is needed for evaluations. The fact that they moved to Nevada after the incident does not absolve them of an obligation, when it is safe to do so, to make themselves available to Defendants' experts. As with the first factor, the third cuts in favor of non-exclusion as there would be no disruption in allowing Defendants' experts to submit fuller disclosure as no trial has even been scheduled. The fourth factor asks the importance of the evidence. The centrality of these experts' opinions as to whether the complained of injuries and conditions were caused by K.W.'s fall is clear from this motion itself: Plaintiffs themselves argue its outcome is determinative to their motion for partial summary judgment. Lastly, Defendants point to COVID as the primary cause of their inability to cure Fed.R.Civ.P. 26 defects in their expert disclosures. While the

delays leading up to February are not attributable to the pandemic, it has subsequently caused an immediate stop to all the potential travel plans that Defendants attempted to initiate in their counsel's email on February 13, 2020.

All these factors weigh against exclusion. This case stands in stark contrast to cases cited by Plaintiffs like *Morris v. Bland*, 666 F.App'x 233, 239 (4th Cir. 2016), (ECF No. 31-1, at 13), in which expert testimony on proximate cause outside the experts' course of treatment was excluded *at trial* because it was not supported by their reports. It is also dissimilar to *Cambridge Capital Grp. V. Phil*, 20 F.App'x 121, 124 (4th Cir. 2001), which Plaintiffs rely on for the proposition that the experts opinions should be ignored for purposes of summary judgement. (ECF No. 31-1, at 7). There, the appellants did not offer any justification for their failure to satisfy Fed.R.Civ.P. 26(a)(2)(B) to the district court or on appeal. *Cambridge*, 20 Fed.Appx. at 124. Here, the disclosure deficits can be cured well before trial and Defendants offer a substantial justification for those current deficits. Thus, the motion as it pertains to consideration of the causation expert disclosures, to date, or what they may produce in the future will be denied.[2] The case will be stayed pending

---

[2] As more fully explained in the next section, Defendants no longer intend to call Mr. Mills as an expert on liability and that portion of the motion will be denied as moot.

completion of the evaluations and the parties are directed to confer regarding logistics and report to the court.

**III. Motion for Partial Summary Judgment**

Plaintiffs also move for "granting summary judgment to Plaintiffs on the issues of liability and causation." (ECF No. 31, at 4).

"In Maryland, 'to assert a claim in negligence, the plaintiff must prove: '(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.'" *Rybas v. Riverview Hotel Corp.*, 21 F.Supp.3d 548, 650 (D.Md. 2014) (quoting *100 Inv. Ltd. P'Ship v. Columbia Town Ctr. Title Co.*, 430 Md. 197, 212-13 (2013)).

Plaintiffs correctly point out that, "[i]t is well-settled in Maryland that a landlord who leases a portion of his property to tenants and reserves another portion of the property for the common use of the tenants must exercise ordinary care to keep the common area reasonably safe." (ECF No. 31-1, at 8) (quoting *Rivas v. Oxon Hill Joint Venture*, 130 Md. App. 101, 112 (2000)). They argue that it is undisputed that a nine-inch gap existed between the railing and the door frame, and that K.W. passed through that gap onto the ledge before he fell. Furthermore, their engineering expert, Duane Ferguson, reports that the gap violated the

10

applicable building code which they argue establishes a *per se* breach of Defendants' duty of care owed to Plaintiffs.  (*Id.* at 9-11).

### A. Liability

Defendants outright concede the issue of "liability based on the measure of the gap in the subject railing at the time of the incident and the applicable codes."  On this front, they say that Plaintiffs' motion to exclude Brian Mills, P.E., the engineering expert they initially expected to testify, is mooted as they stipulate that he will not be called as an expert during trial.  (ECF No. 34, at 2-3).  The motion for partial summary judgment on the issue of premises liability will be granted.  The only remaining question is whether there exists a material question as to whether K.W.'s fall caused the injuries for which his parents seek relief.

### B. Causation

Plaintiffs argue that, "The only conclusion a reasonable jury could make is that the nine-inch gap was a proximate cause of the injury."  (ECF No. 31-1, at 9).  Their reply further emphasizes that, "Plaintiffs have provided both expert opinions and diagnoses contained in medical records of treating physicians that establish that K.W. suffers from medical and neurological sequelae of the traumatic brain injury that was caused by Defendants' negligence."  (ECF No. 35, at 6).  Without proper expert reports, their motion

11

states, "Defendants have offered no . . . alternative explanation for K.W.'s injuries." Given the delay in producing expert reports to the contrary, they argue, "the only reasonable conclusion is that Defendants' experts agree with Plaintiffs' experts regarding liability and causation." (ECF No. 31-1, at 11).

Despite conceding a breach of duty to keep the building's common areas safe, Defendants vehemently argue that there remain genuine questions of material fact on the issue of causation. They write, "[a]s Plaintiffs well know, the issue of causation of the minor Plaintiff's alleged injuries and damages is the subject of medical and other health care experts' opinions, and Defendants cannot supply any expert opinions until their experts have had an opportunity to evaluate the minor Plaintiff and interview his parents." Plaintiffs have not carried their burden on this issue, they argue, as "there is no proof at all that the 18-month-old minor Plaintiff could not possibly have gotten past the railing with a code-compliant gap." Similarly, they contend "it is not at all certain that his medical and neurological conditions resulted from this incident" as Plaintiffs have not ruled out alternate explanations. (ECF No. 34, at 2-4). Defendants suggest that his developmental delays have an alternate explanation and point to a documented family history of ADHD and dyslexia found in the "Initial Evaluation Note" taken at the Rehabilitation Clinic at the Kennedy Krieger Institute as part of K.W.'s rehabilitation

12

after the fall. (ECF No. 34, at 3) (citing ECF No. 34-1, at 6). They also point to the report of Plaintiffs' expert William A. Weiss, M.D. that shows K.W. exhibited signs of a speech delay before the incident. (*Id.* at 3-4) (citing ECF No. 34-1, at 10).

While this kind of speculation, without the support of experts, would likely not survive summary judgment, Defendants expect some expert support for these purported material questions of causation. Stephen L. Nelson, Jr., M.D., Ph.D., for example, is a "board-certified pediatric neurologist and [] pediatrician" and after evaluating K.W. and interviewing his parents "is expected to testify concerning K.W.'s alleged injuries and the causation of them, his current condition . . . any recommended future treatment and care, and his prognosis" and will produce a report to that effect. Ida Sue Baron, Ph.D. is board-certified clinical neuropsychologist and [] subspecialist pediatric clinical neuropsychology" and is expected to produce a similar evaluation of K.W. Alternatively, Trudy R. Koslow, M.Ed. CRC, like the economist Bruce Hamilton, Ph.D., is expected mostly to produce testimony and a report pertinent to any eventual question of damages. Ms. Koslow's evaluation of K.W. as a "certified rehabilitation counselor and [] life care planner," however, may address causation as well as she is "expected to testify concerning

13

K.W.'s alleged injuries, [and] his current level of functioning." (ECF No. 31-2, at 85-87).

All of this, viewed in the light most favorable to Defendants as the non-moving party, raises at least a material question as to causation.  It is too early to declare the issue of causation foreclosed and the parties must make a joint effort to provide Defendants' experts an opportunity to speak with and evaluate Plaintiffs in exploring this issue further.  The motion for partial summary judgment on this issue will be denied.

**IV. Conclusion**

For the foregoing reasons, the motion for partial summary judgment and to exclude Defendants' engineering expert is denied in part and granted in part.  A separate order will follow.

                                                                             /s/
                                            DEBORAH K. CHASANOW
                                            United States District Judge